ever, hold the question, and give the defendants opportunity to present objections and be heard, and, if necessary, refer the subject to a master.

## Case No. 7,728.

### In re KERR.

[2 N. B. R. 388 (Quarto. 124): [1] 2 Am. Law T. Rep. Bankr. 39.]

District Court, W. D. Missouri. March, 1869.

BANKRUPTCY—JUDGMENT CREDITOR—SOLVENCY OF DEBTOR.

Creditors holding a judgment may order execution to issue and levy upon and sell the property of their debtor, and the bankrupt law [of 1867 (14 Stat. 517)] will protect them in the advantage thus secured, although they may have had, at the time of ordering the execution, doubts as to the solvency of the debtor.

[Cited in Re Dunkle, Case No. 4,160.]

W. W. Kerr was a merchant of Jefferson City. A. Johnson & Co., of St. Louis, obtained a judgment against him on the 8th of August, 1868. Other large claims were held against him in St. Louis, upon which suit was threatened. In his embarrassment, Kerr went to St. Louis and called a meeting of his creditors, including A. Johnson & Co. All attended and heard from him a statement of his condition, financially. A. Johnson & Co. stated the condition of their claim; that it had matured into judgment, and, retiring, took no further part in the creditors' meeting; but at once, by telegraph to their attorneys here, caused execution to issue and levy to be made, which was done on the 20th of August, 1868. On the same day the creditors of Kerr participating in the meetings ordered him to go into bankruptcy. This he did, filing his petition August 25th, 1868. On the 28th of August, 1868, he was declared and adjudged a bankrupt. The levy was made on the goods in the store, and the day after, by advice of counsel, it was closed by Mr. Kerr. Johnson & Co. were first made acquainted with the fact that they had obtained judgment, by Mr. Kerr himself, on the 28th of August. But they had, however, given instructions to their agents here in due time. Their judgment was for one thousand six hundred and twenty-four dollars and fifty-four cents. Action was brought by Charles F. Lohman, assignee of Kerr, petitioning the court to declare the levy void and of no effect, and for an order directing the sheriff of Cole county, who had made the levy, to deliver the goods levied upon to the assignee. It was alleged in the petition that Johnson & Co., at the time of ordering the execution, knew that Kerr was insolvent, and was about to go into bankruptcy; and that levy and seizure was made to hinder and delay creditors, to give Johnson & Co. a preference, and prevent an equal distribution of assets under

[1] [Reprinted from 2 N. B. R. 388 (Quarto, 124) by permission.]

14FED.CAS.—25

the bankrupt law. This respondents deny, affirming that all that was done was in a bona fide effort to collect an honest debt due.

KREKEL, District Judge. The question to be decided is, had Johnson & Co. a right, under the bankrupt law, to order out an execution and direct a levy to be made on the goods of the bankrupt after the interview with Kerr, at the time the latter called his creditors together for the purpose of making terms with them? The court affirms their right to do so. To hold otherwise would deprive them of the advantages gained by their diligence. Though it be true that the bankrupt law primarily aims at an equal distribution of the bankrupt's estate, yet it can only mean to effect such distribution among creditors who stand in the same relation to the debtor. Johnson & Co. had no lien on the personal property of Kerr by virtue of their judgment, for, under the statutes of Missouri, to obtain a lien on personal property an actual seizure thereof is required. Yet their claim, having matured into a judgment, was in a better condition to enforce payment than the claims of creditors having simply notes or open accounts against Kerr. Johnson & Co. could at any time have taken out an execution, and by a levy secured their debt. None of the other creditors could have done this. The provisions of the bankrupt law countenance, rather than discourage, diligence in the collection of debts; and next to the equal distribution of the assets of the bankrupt, its special aim seems to be to inculcate and enforce prompt payment of liabilities, and in order to secure that object furnishes suitable remedies. Though Johnson & Co., at the time of ordering out the execution, may have doubted the solvency of Kerr, they were not bound to surrender, to the rest of the creditors, the superior means they had gained to collect their debts, by virtue of the judgment they had obtained, or to lose the benefit thereof by inactivity. The judgment against Kerr was obtained on the 8th day of August, 1868, and the execution ordered out and levy made on the 18th day of the same month.

The petition for the benefit of the bankrupt act was filed by Kerr August 25th, 1868, and he was declared a bankrupt August 28th, 1868, so that the levy was made prior to filing the said petition, and to the adjudication of bankruptcy. Had there been such delay in ordering out the execution and making the levy as to leave it doubtful in the minds of the court, whether the suit was really instituted to collect debts at that time, a question would have arisen as to whether a creditor in the condition of Johnson & Co. would be permitted to sleep upon the advantages gained, to the injury of other creditors. Were a creditor, for instance, to obtain a judgment for an amount large enough to absorb the greater portion of the assets of his debtor, and hold or use such judgment for the purpose of preventing or obstructing other cred-

itors in the collection of their debts, courts would see that no undue advantage was taken. There is nothing in this case to justify the conclusion that Johnson & Co. had any such intention or design. What they did appears to have been done in the legitimate pursuit of the collection of an honest debt, and the advantages obtained by their diligence they must be permitted to enjoy. The estimated value of the goods levied on being greater than was supposed to be necessary to satisfy the execution, the court heretofore, on application, ordered the sheriff to deliver them to the assignee, directing the latter to dispose of them, but to hold the proceeds thereof subject to the order of this court. It is now ordered and adjudged that Chas. F. Lohman, assignee, pay out of the proceeds aforesaid, the amount of the judgment, interests, and costs, of A. Johnson & Co., and that the balance of the proceeds be considered as part of the estate of said bankrupt, and dealt with accordingly.

---

## Case No. 7,729.

In re KERR et al.

[9 N. B. R. 566.] 1

District Court, South Carolina.2 1873.

BANKRUPTCY — ASSIGNMENT OF HOMESTEAD — HOMESTEAD ACT—AFTER-CONTRACTED DEBTS.

1. The debts of A. were mostly contracted in 1866 and 1867. and an adjudication in bankruptcy, and the assignment of a homestead was prior to the passage of the act of March 3d, 1873 [17 Stat. 577]. *Held*, that the rights of the parties in a proceeding in bankruptcy are fixed at the date of the adjudication and that, at the date of adjudication in this case no homestead in land could have been allowed. as most of the debts were contracted prior to the new constitution of South Carolina. passed in 1868, and the various acts of the legislature, passed in accordance with the provisions of that constitution.

2. Ordered. that the assignment of a homestead be vacated. and that the assignee without delay, sell the lots assigned as a homestead, after giving the usual public notice.

[In the matter of Kerr & Roach, bankrupts.]

BRYAN, District Judge.   There are many points raised in this case. only a few of which need be considered, in order to reach a conclusion upon the issue before the court. The following are the admitted facts in the case: (1) The debts due the petitioners were contracted in 1866 and 1867.   (2) The adjudication in bankruptcy and the assignment of homestead in land by the assignees in bankruptcy were prior to the passage of the act of the 3d March, 1873.   Now without considering the question of how far congress has the power of passing laws of a retrospective effect, that affect rights already vested, I am of the opinion that the rights of the parties

in a proceeding in bankruptcy are fixed at the date of the adjudication.   At the date of adjudication no homestead in land could have been allowed to the bankrupts as the debts of Hutchinson and Roach, and also many other creditors had been contracted prior to the constitution of South Carolina of 1868, and the acts of the legislature passed in accordance with the provisions of that constitution.   Gunn v. Barry [15 Wall. (82 U. S.) 610].   If no homestead could be allowed under the state laws, it follows, that neither the bankrupt act, nor the act of June, 1872 [17 Stat. 334], can give these bankrupts a homestead in land.   The late decision of Bond, J. (In re Dillard [Case No. 3,912]) fully confirms these views.   It is, therefore, ordered that the assignment of homestead in land be vacated; and that the assignees do, without delay, sell for cash the lots assigned as homestead, after giving the usual public notice; and that the proceeds of such sale be applied in accordance with the orders heretofore made in this case.

---

## Case No. 7,730.

KERR v. FORCE.

[3 Cranch, C. C. 8.] 1

Circuit Court, District of Columbia. Dec. Term, 1826.

PLEADING AT LAW — CONSTRUCTION OF LIBELOUS WORDS—PLEA OF JUSTIFICATION—CONSTRUCTION OF AVERMENTS IN PLEA — EFFECT OF ISSUE JOINED — DEMURRER TO PLEA — JUDGMENT NIL DICIT — LIBEL — CHARGE OF CRIME — MORAL OBLIQUITY.

1. In an action upon the case for a libel, if the plaintiff avers that the words amount to a charge of forgery; and if the words under the circumstances stated in the declaration, are capable of that construction, the defendant. if he would justify, must in his plea justify the words to that extent, and show in his plea, a clear case of forgery.

2. Whether the words are. under the circumstances stated in the declaration, capable of such a construction, is a question of law to be decided by the court.

3. Whether the defendant used them in that sense. and intended thereby to charge the plaintiff with forgery, is a question of fact, arising upon the plea of not guilty, and exclusively to be decided by the jury upon all the circumstances in evidence before them.   This question cannot arise upon the issue joined upon the plea of justification, because. by joining issue, the plaintiff has admitted the plea of justification to be good, if true.

4. The rule for construing words in a libel, differs from the rule for construing averments in a plea.   In the former case, the rule is that the words shall be understood by the court and jury in that sense which the author intended to convey to the minds of his hearers as evinced by all the circumstances of the case; but the rule of construction as to pleas. and especially as to pleas in justification of libel, is, that they shall be taken most strongly against the party pleading; and that a man shall not justify by intendment; but every thing must be precisely alleged.

5. The court. in considering a plea, cannot infer one fact from another, as a jury may, but

---

1 [Reprinted by permission.]
2 [District not given.]

1 [Reported by Hon. William Cranch, Chief Judge.]